IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RUSSELL WILLIAM BRADLEY,
    Plaintiff,

vs.                                      Case No.: 3:15cv53/LAC/EMT

FRED GERSON LEVIN, et al.,
    Defendants.
_____ /

## **REPORT AND RECOMMENDATION**

    Plaintiff Russell William Bradley ("Bradley"), proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (doc. 1).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Bradley, it is the opinion of the undersigned that dismissal of this action is warranted.

I.    BACKGROUND

    Bradley was an inmate of the Escambia County Jail when he commenced this case (*see* doc. 1 at 1). He names the following persons as Defendants: Fred Gerson Levin, a shareholder of the Levin Papantonio law firm in Pensacola, Florida; Bruce Miller, the public defender for the First Judicial Circuit of Florida; Jessica Lenderman, an assistant public defender; Jennifer Frydrychowicz, a County Judge in Escambia County, Florida; and Bill Eddins, the State Attorney for the First Judicial Circuit of Florida (*id.* at 1–2). In the Statement of Facts section of the complaint, Bradley lists several "witnesses" and then states the following, verbatim:

> Plaintiff, Mr. Russell W. Bradley has been abused by the internationally $$ influential Fred McClauren Dierks $ and is being abused by the very $ influential Fred G. Levin of Los Costa Natra and Roy Jones Junior and Pablo Escobar and Vince Whibbs Junior and the Sandshaker Bar affiliations because the notorious

 billionaire Fred M. Dierks could not bribe Russell William Bradley and Russell W. Bradley protected and nurtured his #1 yoga and Chi-gong student/prodigy Brian James Hooper and Russell William Bradley being very well educated in law and very gifted at and in law Russell William Bradley got Mr. Joseph J. Gazzoli, President of the Wealth Management Division of the UMB to see the vast volumonous [sic] res ipsa locquitur [sic] and direct evidence which Sifa Russell William Bradley had accumulated for over 8 years proving the U.M.B. Bank: 800-545-6101 and also got Mr. Joseph J. Gazzoli to turn whistleblower against Fred Dierks and his many bribers: quasi-trustees in the U.M.B. Bank and Synovus and many bribed corrupt lawyers and accountants from Dierks Arkansas to Levin Beach Fla. and from Kansas City, Mo. to Pensacola Courthouse and Pensacola lawyers whom committed and some still are committing felonies and $$ torts $ for Fred Dierks and Fred Levin against Brian James Hooper and Russell William Bradley. Both are being abused with R.I.C.O. $ corrupted lawyers and officials now!

(doc. 1 at 5–6).

 Bradley claims that Mr. Levin committed "litanies of very felonious crime [sic] of moral turpitude," including RICO violations, duress, embezzlement, unspecified civil rights violations, malicious abuse of process, and false imprisonment (doc. 1 at 7). As relief, Bradley seeks an injunction "disbarring" Assistant Public Defender Lenderman and Judge Frydrychowicz (*id.*). He also seeks one hundred million dollars (*id.*).

II. ANALYSIS

 Because Bradley is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Bradley. Davis v. Monroe Cnty. Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

    A.    RICO

Bradley peppers his complaint with references to RICO. However, his conclusory and vague references are insufficient to state a plausible claim under the civil RICO statutes. Section 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant participated in the conduct of an enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, to establish a federal civil RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Williams v. Mohawk Indus. Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (quotation omitted). In addition, the plaintiff in a civil RICO action must also satisfy the requirements of § 1964(c), which requires (1) a showing of an injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. *Id.*; 18 U.S.C. § 1964(c); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). "Racketeering activity"

is defined to include specified predicate acts. *See* 18 U.S.C. § 1961(1). In order to prove a pattern of racketeering in a civil RICO case, "a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." Am. Dental Assoc. v. Cigna Corp., 605 F.3d 1283, 1290–91 (11th Cir. 2010). The predicate acts must also be related to each other, such as having the same or similar purposes, results, participants, victims, or methods of commission. *See* Design Pallets, Inc. v. GrayRobinson, P.A., 515 F. Supp. 2d 1246, 1256 (M.D. Fla. 2007) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). The predicate acts must also be continuous, which can be shown by a series of related acts committed over a substantial period of time. *See* Design Pallets, Inc., 515 F. Supp. 2d at 1256; *see also* Anderson v. Smithfield Foods, Inc., 209 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002) (continuity is satisfied by a closed period of repeated conduct or past conduct posing a future threat, but not by isolated events). Importantly, the Supreme Court has noted that "requiring" two acts does not mean that two acts will always constitute a "pattern." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) ("[Two] isolated acts of racketeering activity do not constitute a pattern."). "The target of [RICO] is thus not sporadic activity . . . . It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (quoting S. Rep. No. 91–617, p. 158 (1969)); *see also* Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1397 (11th Cir. 1994) (each monthly pension payment based on defendants' illegal request was a separate, related predicate act).

      Additionally, a plaintiff must plead a RICO claim with the specificity required in Federal Rule of Civil Procedure 9(b), which sets forth the pleading standard for claims of fraud. Under Rule 9(b), a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled them; and (4) what Defendants gained by the alleged fraud. *See* Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997) (citation omitted). Because fair notice is the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme. *See id.*, 116 F.3d at 1381 (citing Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994)).

Therefore, in a case involving multiple defendants, the complaint should inform each defendant of the nature of his or her alleged participation in the fraud. *Id.* (citations omitted).

Here, the factual allegations of the complaint, even liberally construed, do not allege any predicate acts specified in § 1961(1) which amounted to or posed a threat of continued criminal activity. Further, Bradley does not plead his claim with the specificity required by Fed. R. Civ. P. 9(b). Moreover, Bradley failed to allege causation between a substantive RICO violation and any injury he suffered. Therefore, Bradley's civil RICO claims should be dismissed.

### B. Civil Rights Violations

Bradley also asserts unspecified civil rights violations against Defendants. Section 1983 of Title 42 of the United States Code provides for the recovery of monetary damages for an alleged violation of a right secured by the Constitution or other federal laws. Two essential elements must be present to establish a § 1983 claim: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing Parratt).

Bradley cannot state a § 1983 claim against Mr. Levin, Public Defender Miller, or Assistant Public Defender Lenderman, because they are private parties. A private party does not normally act under color of state law and is therefore not subject to suit under section 1983. *See* Dennis v. Sparks, 449 U.S. 24, 27–29, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). It is well established that attorneys appointed by the court to represent indigent criminal defendants do not act under color of state law when they represent clients. *See* Polk Cnty. v. Dodson, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); Christian v. Crawford, 907 F.2d 808, 810 (11th Cir. 1990). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). Private parties may be viewed as state actors for section 1983 purposes if one of the following three tests is met: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2)

the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise ('nexus/joint action test')." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (citations and internal quotation marks omitted).

Here, Bradley does not allege any facts suggesting that Mr. Levin acted under color of state law when he engaged in the conduct of which Bradley accuses him. Further, Bradley does not even mention Public Defender Miller or Assistant Public Defender Lenderman in his factual allegations. Therefore, any § 1983 claims that Bradley brings against Mr. Levin, Public Defender Miller, and Assistant Public Defender Lenderman should be dismissed.[1]

Bradley also brings a § 1983 claim against Judge Frydrychowicz; however, as with Public Defender Miller and Assistant Public Defender Lenderman, Bradley does not even mention Judge Frydrychowicz in his factual allegations. Further, Judge Frydrychowicz is absolutely immune from suit. *See* Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citing Mitchell v. Forsyth, 472 U.S. 511, 526–27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); Dennis, 449 U.S. at 27; Sibley v. Lando, 437 F.3d 1067, 1071 (11th Cir. 2005). This immunity applies to claims for nominal damages. *See* Simmons v. Conger, 86 F.3d 1080, 1084–85 (11th Cir. 1996). Immunity may be overcome only (1) where the judge has not acted within her judicial capacity or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11; Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

Whether an act by a judge is a "judicial" one relates "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in [her] judicial capacity." Mireles, 502 U.S. at 11 (citing Stump, 435 U.S. at 362); *see also* Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996). The relevant

---

[1] What is more, it is well established that attorneys employed as public defenders do not act under color of state law when they represent clients. Polk County v. Dodson, 454 U.S. 312, 318, 102 S. Ct. 445, 450, 70 L. Ed. 2d 509 (1981); Christian v. Crawford, 907 F.2d 808, 810 (11th Cir. 1990).

Case No.: 3:15cv53/LAC/EMT

inquiry is the "nature" and "function" of the act, not the "act itself." Mireles, 502 U.S. at 13 (citing Stump, 435 U.S. at 362). In other words, the court must look to the particular act's relation to a general function normally performed by a judge.

A judge is not deprived of absolute immunity from liability for damages because an action she took was in error, was illegal, was done maliciously, or was in excess of her authority. Stump, 435 U.S. at 355–57; *see also* Mireles, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice). Rather, a judge is subject to liability only when she acted in clear absence of all jurisdiction, and knew or must have known that she was acting in such a manner. Simmons, 86 F.3d at 1084–85 (citing Stump, 435 U.S. at 356–57). An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which she presides. Dykes, 776 F.2d at 946–47 (citations omitted). The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power." 48A C.J.S. Judges § 86. Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly. Stump, 435 U.S. at 357. Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction). The proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded her jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. Stump, 435 U.S. at 357 (quotation omitted).

The undersigned takes judicial notice of information available on the database maintained by the Clerk of Court for Escambia County, Florida, viewed June 10, 2015, http://www.escambiaclerk.com. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court

dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries). The clerk of court's database indicates that Bradley was arrested on November 25, 2014, for making an obscene phone call, a misdemeanor offense. *See* State v. Bradley, Case No. 2014-MM-006530. The same day, he was arrested for Driving Under the Influence with damage to property or person, also a misdemeanor. *See* State v. Bradley, 2014-MM-006531. Judge Frydrychowicz presided over the proceedings in both cases. Both cases terminated upon the State Attorney's Office announcing a nolle prosequi.

Judge Frydrychowicz's conduct in the criminal proceedings involving Bradley were functions normally performed by a judge. Furthermore, because Bradley was a party in the cases over which Judge Frydrychowicz presided, he dealt with Judge Frydrychowicz in her judicial capacity. Moreover, Bradley does not allege, nor do the facts suggest, that Judge Frydrychowicz acted in the complete absence of all jurisdiction; indeed, as previously noted, Bradley does not even mention Judge Frydrychowicz in the factual allegations of the complaint. Therefore, Bradley's claim for monetary damages is barred by the doctrine of judicial immunity.

Additionally, Bradley's claim for injunctive relief is moot, since the criminal proceedings against him have now terminated. Bradley's factual allegations relate to past conduct—he made no allegation of a continuing injury, and the possibility that he will be subject to criminal prosecution in the future is insufficient to state a claim for declaratory relief. *See* Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985) ("The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments."); *see also* Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1348 (11th Cir. 1999) ("Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."). In order to warrant injunctive relief, the party must demonstrate a substantial likelihood of irreparable injury, which is "neither remote nor speculative, but actual and imminent." Siegel v. LePore, 234 F.3d 1163, 1176–77 (11th Cir.2000) (en banc ) (citation and quotation marks omitted). Bradley, however, failed to allege an actual and imminent threat of future injury. Therefore, he is not entitled to injunctive relief.

Case No.: 3:15cv53/LAC/EMT

Bradley's claims against State Attorney Eddins are barred by the doctrine of prosecutorial immunity. A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government. Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615–16, 125 L. Ed. 2d 209 (1993). The prosecutorial function includes the initiation and pursuit of criminal prosecution. Imbler v. Pachtman, 424 U.S. 409, 424, 96 S. Ct. 984, 992, 47 L. Ed. 2d 128 (1976). Immunity extends to charging a defendant without probable cause and to the knowing proffer of perjured testimony at trial. Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002). Under these principles, State Attorney Eddins's conduct in prosecuting charges against Bradley clearly falls within the prosecutorial role; thus, State Attorney Eddins is immune from liability.

  C. State Law Claims

Bradley appears to bring state tort claims of duress, embezzlement, malicious abuse of process, and false imprisonment. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. U. S. Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in this case, the undersigned concludes that any state law claims asserted by Bradley, should be dismissed to permit him to pursue them in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

III. CONCLUSION

Case No.: 3:15cv53/LAC/EMT

Bradley's federal claims should be dismissed under § 1915(e)(2)(B) because he seeks monetary relief against Defendants who are immune from such relief, and his factual allegations fails to state a plausible claim on which relief may be granted. Further, it is clear that no additional facts or legal theories could cure the pleading deficiencies. Therefore, amendment of the complaint would be futile, and dismissal is thus warranted.

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims against all Defendants be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. That Plaintiff's state law claims be **DISMISSED without prejudice**.

3. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 12th day of June 2015.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**